UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OPACMARE USA, LLC,

    Plaintiff,

v.                                                  Case No. 8:16-cv-3288-T-33JSS

LAZZARA CUSTOM YACHTS, LLC,

    Defendant.
_____/

LAZZARA CUSTOM YACHTS, LLC,

    Counterclaimant,

v.                                                  Case No. 8:16-cv-3288-T-33JSS

OPACMARE USA, LLC,

    Counterclaim Defendant.
_____/

## **ORDER**

This matter comes before the Court pursuant to the Motion for Summary Judgment filed by Lazzara Custom Yachts, LLC on September 15, 2017 (Doc. # 79), with a response in opposition thereto filed by Opacmare USA, LLC on October 17, 2017 (Doc. # 84), and a reply in support thereof filed by Lazzara Custom Yachts on October 31, 2017 (Doc. # 86); the Cross Motion for Summary Judgment filed by Opacmare on November 3, 2017 (Doc. # 88), with a response in opposition thereto filed by Lazzara Custom Yachts on November 30, 2017 (Doc. # 89), and a reply in support thereof filed by Opacmare on December 18, 2017

(Doc. # 92); and the Motion for Sanctions filed by Lazzara Custom Yachts on January 19, 2018 (Doc. # 93), with a response in opposition thereto filed by Opacmare on February 2, 2018 (Doc. # 99).

For the reasons that follow, Lazzara Custom Yachts's Motion for Summary Judgment (Doc. # 79) is granted, Opacmare's Cross Motion for Summary Judgment (Doc. # 88) is denied, and Lazzara Custom Yachts's Motion for Sanctions (Doc. # 93) is denied.

I. **Background**

Opacmare originally brought this action seeking damages and injunctive relief against Lazzara Custom Yachts, Joseph M. Lazzara, and Steven B. Lazzara, for trademark infringement under 15 U.S.C. § 1114 and Florida common law, trademark counterfeiting under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a) and Florida common law, cyberpiracy under 15 U.S.C. § 1125, and violation of the Florida Deceptive and Unfair Trade Practices Act under Fla. Stat. § 501.201 et seq. (Doc. # 44). On July 6, 2017, the claims against Joseph and Steven Lazzara were dismissed. (Doc. # 69).

Opacmare alleged that Lazzara Custom Yachts was unlawfully using the LAZZARA trademark, United States Trademark Registration Number 3064907, which Opacmare claimed ownership of. (Doc. # 44 at ¶ 39). In its Answer to the

2

Amended Complaint, Lazzara Custom Yachts raised several affirmative defenses, and counterclaims seeking a declaratory judgment declaring it to be the owner of the LAZZARA Mark and a corresponding correction of the trademark registry. (Doc. # 53).

Upon Opacmare's motion, the Court dismissed without prejudice the First Amended Complaint. (Doc. # 87). As such, the case proceeds only on Lazzara Custom Yachts's counterclaims, on which both parties now seek summary judgment. (Doc. ## 79, 88). Lazzara Custom Yachts's Motion also sought summary judgment on the claims in the First Amended Complaint. (Doc. # 79). However, since the First Amended Complaint has been dismissed, the Court addresses the Motion only as to Lazzara Custom Yachts's counterclaims.

Additionally, Lazzara Custom Yachts seeks sanctions under Federal Rule of Civil Procedure 11, alleging that Opacmare continues to raise frivolous arguments in its Answer to Lazzara Custom Yachts's counterclaims. (Doc. # 93). The Motions are ripe for review.

## II. **Legal Standard**

### A. **Summary Judgment**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56. Summary judgment will be granted unless there is a "genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1968) (emphasis in original). An issue is genuine if there is a "real basis in the record" on which "a reasonable jury could return a verdict for the non-movant." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993). A fact is material if it might affect the outcome of the suit under the applicable substantive law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). If there is a conflict between the allegations or evidence, all reasonable inferences should be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zanith Radio Corp., 475 U.S. 574, 587 (1986).

**B.  Rule 11 Sanctions**

Under Rule 11, an attorney certifies that in any paper presented to the Court, "the factual contentions have evidentiary support (or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery) and the legal contentions are warranted by existing law or a nonfrivolous argument for extending or

altering existing law or for establishing new law." <u>Lee v. Mid-State Land & Timber Co.</u>, 285 Fed. App'x 601, 608 (11th Cir. 2008) (citing Fed. R. Civ. P. 11). In addressing a motion under Rule 11, the Court conducts a two-part inquiry: (1) "whether the party's claims are objectively frivolous," either factually or legally, and, if so, (2) "whether the person who signed the pleadings should have been aware that they were frivolous." <u>Worldwide Primates, Inc. v. McGreal</u>, 87 F.3d 1252, 1254 (11th Cir. 1996).

III. **Facts**

    **A.    Summary Judgment**

In seeking summary judgment on Lazzara Custom Yachts's counterclaims, the parties seek a determination from this Court as to the legal ownership of the LAZZARA Mark. Making that determination requires the Court to trace the ownership of the LAZZARA Mark as it transferred between several different entities. The undisputed facts are as follows.

    **1.    Creation and Collateralization of the LAZARRA Mark.**

In the early 1990s, Richard "Dick" Lazzara and Steven "Brad" Lazzara founded Lazzara Yacht Corporation, a separate corporate entity from the named defendant in this case. (Doc. ## 74 at 5, 75 at 5). Lazzara Yacht Corporation manufactured high-end yachts, which sold for upwards of $20 million. (Doc.

5

# 75 at 17). As part of that business, Dick Lazzara created the LAZZARA Mark. (Doc. # 74 at 6). On March 7, 2006, he registered it with the United States Patent and Trademark Office. (Doc. # 74-2).

On or about May 7, 2007, Lazzara Yacht Corporation entered into a $15 million revolving credit loan agreement with Tennessee Commerce Bank. (Doc. # 75-2). Lazzara Yacht Corporation signed a promissory note (Doc. # 75-4) and a security agreement (Doc. # 74-1), which granted Tennessee Commerce Bank a security interest in Lazzara Yacht Corporation's general intangibles as collateral to the loan agreement. The general intangibles collateralized by the security agreement included the LAZZARA Mark. (Doc. # 75 at 9). On May 9, 2007, Tennessee Commerce Bank filed a Uniform Commercial Code Financing Statement, perfecting its interest in the LAZARRA Mark. (Doc. # 79-2).

Eventually, Tennessee Commerce Bank went bankrupt and the Federal Deposit Insurance Corporation was named Tennessee Commerce Bank's Receiver. (Doc. ## 74 at 7, 73 at 6). As Receiver, the FDIC sold a pool of loans, including the loan secured by the LAZARRA Mark, to ReVal Financial, LLC. (Doc. # 73-2). On September 4, 2012, ReVal filed a UCC Financing Statement, reflecting the assignment. (Doc. # 73-4).

6

### 2. UCC Foreclosure and Sale of the LAZARRA Mark.

Lazzara Yacht Corporation was unable to repay the loan and soon fell into default. (Doc. # 75 at 9). ReVal attempted to assist Lazzara Yacht Corporation in selling the company for nearly two years. (Doc. # 73 at 11). The record references a Settlement Agreement dated January 22, 2013, and a Forbearance dated October 19, 2012. (Doc # 73-11 at 25-26). However, it appears that neither document is currently before the Court. After being unable to secure a buyer for the defaulted company, ReVal assigned its interest in the secured loans to ReVal Financial NPL, LLC. (Doc. # 73-5). ReVal NPL filed a UCC Financing Statement reflecting the assignment. (Doc. ## 73-6, 73-7). Thereafter, ReVal NPL sought to foreclose on Lazzara Yacht Corporation's assets, including the LAZARRA Mark, and sell them to a third party, GB Asset Investments, LLC. (Doc. # 73 at 19).

On or around October 9, 2014, notification was sent to Lazzara Yacht Corporation and its secured creditors that Lazzara Yacht Corporation's assets would be sold "through a private sale sometime on or after October 24, 2014." (Doc. # 73-9). That notification indicated it was from ReVal Financial Properties, LLC. (Doc. # 73-9). ReVal Properties and ReVal NPL are both wholly-owned subsidiaries of Republic Financial Corporation. (Doc. # 73 at 5) Subsequently, ReVal

Properties sent an undated "Notice of Disposition of Assets," stating that it was "exercising its right to foreclose upon and transfer right, title, and interest in the Assets," including the LAZARRA Mark, "to itself." (Doc. # 73-12). It further stated that it foreclosed "through a private sale under Uniform Commercial Code § 9-610," which is codified in Florida Statutes section 679.610. (Doc. # 73-12).

Effective November 7, 2014, ReVal NPL and ReVal Properties sold the LAZZARA Mark, and other assets, to GB Asset for $90,000. (Doc. # 73-11). Simultaneously, GB Asset also purchased a barge from Lazzara International Yacht Sales, Inc., an entity related to Lazzara Yacht Corporation, for $1,150,000. (Doc. # 73-15). Also executed was a release of lender, in which ReVal NPL and ReVal Properties (as lenders) agreed to release the liens "encumbering the Boat Molds, General Intangibles and Barge," and Lazzara Yacht Corporation, Lazzara International Yacht Sales, and other entities (as borrowers), agreed to release the lenders from any claims. (Doc. # 73-16). This included any claims "arising out of, or in any way connected with or related to the Purchase Agreement dated November 7, 2014, the Settlement Agreement dated January 22, 2013, and the Forbearance dated October 19, 2012. (Doc. # 73-16 at 3). ReVal NPL then terminated the security interest on February 10, 2015. (Doc.

8

# 73-22).

Following the sales, ReVal Properties sent Lazzara Yacht Corporation notification that the sale had occurred and that Lazzara Yacht Corporation still owed more than $10 million. (Doc. # 73-24). At deposition, the corporate representative for ReVal NPL and ReVal Properties, Charles Singleton, testified that the amount was closer to $15 million. (Doc. # 73 at 35).

On April 17, 2015, GB Asset sold the assets it had purchased, including the LAZARRA Mark, to the named defendant, Lazzara Custom Yachts, for $50,000. (Doc. # 76-2).

### 3. State Court Proceedings Supplementary.

On February 23, 2015, a Consent Final Judgment was entered in the Seventeenth Judicial Circuit of Florida in favor of Opacmare and against Lazzara Yacht Corporation, in the sum of $187,375. (Doc. # 88-19). On July 22, 2015, the state court entered an order granting Opacmare's motion for proceedings supplementary and assigning Opacmare "all Lazzara Yacht Corporation intellectual property," including the LAZZARA Mark, in satisfaction of the State Judgment (Doc. # 88-21). The motion for proceedings supplementary was uncontested and no third parties were impleaded. (Doc. # 84 at 5-6). Subsequently, Lazzara Custom Yachts filed a motion

9

to intervene in the state action and vacate the July 22, 2015, Order, which Opacmare opposed. (Doc. # 79-6). On September 27, 2016, the state court entered an order denying the motion to intervene post-judgment. (Doc. # 79-7). The court noted that "there was no evidence provided demonstrating possession of the trademark." (Doc. # 79-7 at 2).

## IV. Legal Analysis

### A. Summary Judgment

At first glance, the chain of title is clear: Lazzara Yacht Corporation owned the trademark until ReVal NPL foreclosed on it, ReVal NPL then sold it to GB Asset, and GB Asset sold it to Lazzara Custom Yachts. Opacmare seeks to break the chain of title by undermining ReVal NPL's UCC foreclosure. However, Opacmare has no legal basis to challenge the UCC foreclosure sale and there is no evidence that GB asset was not a good faith buyer of the trademark. There is simply no scenario in which legal title to the LAZARRA Mark did not transfer to Lazzara Custom Yachts.

First, Opacmare alleges that the pre-sale notice of the foreclosure was improper under the UCC. (Doc. # 88 at 13–14). Specifically, Opacmare points out that the notice was sent from ReVal Properties, not ReVal NPL, and that it was not properly authenticated. (Doc. # 88 at 13–15). However, Opacmare agrees that, as an unsecured creditor, it was not

10

entitled to receive notice of the sale. (Doc. # 88 at 13 n.7). Without an entitlement to receive notice, Opacmare has no standing to object to the propriety of the notice. See iFlex Inc. v. Electroply, Inc., No. CIV. 03-2513(DWF/SRN, 2004 WL 502179, at *2 (D. Minn. Mar. 4, 2004) ("As an unsecured creditor, Electroply is not entitled to notice of the sale under these provisions, and thus, Electroply cannot challenge the lack of notice."). Even if Opacmare had standing to challenge the notice given in this case, improper notice does not void a UCC foreclosure. See, e.g., Bagel Break Bakery, Inc. v. Bagelman's Inc., 431 So. 2d 676, 677 (Fla. 4th DCA 1983) ("Failure to give notice does not vitiate the sale . . . .")

Next, Opacmare argues that the notice of disposition (Doc. # 73-12) also purportedly shows ReVal Properties foreclosing upon the trademark. (Doc. # 88 at 15). Opacmare is correct that without documentary evidence of ReVal Properties having a security interest in the trademark, it would have been improper for ReVal properties to foreclose on the trademark itself. See In re Inofin Inc., 455 B.R. 19, 46 (Bankr. D. Mass. 2011) (finding that a foreclosure sale was "a nullity" without an enforceable security interest). However, the actual purchase agreement states that both ReVal NPL and ReVal properties had privately sold the trademark to

11

themselves and were now selling the trademark to GB Asset. (Doc. # 73-11). ReVal NPL was allowed to do just that pursuant to its undisputed, perfected security interest in the trademark. (Doc. # 73-7).

While acknowledging that ReVal, either through ReVal NPL or ReVal Properties, foreclosed upon and took ownership of the LAZZARA Mark through a UCC private sale, Opacmare argues that ReVal NPL, as the secured party, improperly purchased the collateral at a private disposition in violation of Fla. Stat. § 679.610(3)(b). (Doc. # 64 at 16). Nevertheless, this does not give Opacmare standing to invalidate the sale.

If collateral is not the "kind that is customarily sold on a recognized market or is the subject of widely distributed standard price quotations" then the "purchase of the collateral by the secured party at a private disposition is not commercially reasonable." 47 Fla. Jur. 2d Secured Transactions § 377 (2018). But the rules requiring commercial reasonableness in dispositions, as with the rules requiring notice, "are in place 'to protect the debtor, because they help prevent the creditor from acquiring the collateral at less than its true value or unfairly understating its value so as to obtain an excessive deficiency judgment.'" Textron Fin. Corp. v. Lentine Marine Inc., 630 F. Supp. 2d 1352, 1358 (S.D. Fla. 2009).

12

Opacmare acknowledges that "Article 9 does not afford a party in Opacmare's position — an unsecured creditor of a debtor at the time of private sale by a secured creditor — a statutory basis to challenge the sale or set aside the sale." (Doc. # 92 at 4). The Court does not disagree. The remedy for a commercially unreasonable disposition under Fla. Stat. § 679.610, is a limitation on the secured party's right to receive a deficiency judgment. See Weiner v. Am. Petrofina Mktg., Inc., 482 So. 2d 1362, 1365 (Fla. 1986) (explaining the effect of a secured party's commercially unreasonable disposition of collateral).

Therefore, if ReVal NPL foreclosed upon the LAZZARA Mark in a commercially unreasonable manner, its right to receive a deficiency judgment against Lazzara Yacht Corporation may be limited. But Opacmare has not presented a legal basis to prevent the transfer of title to ReVal NPL. See In re Inofin Inc., 512 B.R. 19, 89–90 (Bank. D. Mass. 2014) (finding that the trustee presented "no factual or legal authority" to void a commercially unreasonable foreclosure); see also In re ProvideRx of Grapevine, LLC, 507 B.R. 132, 166 (Bankr. N.D. Tex. 2014) ("When collateral is sold in a commercially unreasonable manner, including if there are deficiencies in notice, the debtor may recover damages or obtain protection from a deficiency judgment, but may not rescind the sale that

13

has been made."). After ReVal NPL obtained title, it assigned it to GB Asset through the November 7, 2014 purchase agreement. See also 15 U.S.C. § 1060(4) (protecting a "subsequent purchaser for valuable consideration without notice").

Even if there were some legal deficiency that prevented title from transferring to ReVal NPL, title still transferred to GB Asset. Based on the express language of the security agreement (Doc. # 73-1 at 7–8), and Fla. Stat. § 679.610(1), ReVal NPL had the power to orchestrate a private sale directly to GB Asset through the November 7, 2014, purchase agreement. Despite the language in the documents, this was the apparent intent of the parties. Mr. Singleton testified that the "intent was always to be a private sale to GB [Asset] of all these assets." (Doc. # 73 at 19).

Importantly, Opacmare did not allege that GB Asset acted in bad faith in purchasing the trademark, so there is no difficulty in finding that GB Asset would be a good faith transferee and therefore protected from having its ownership questioned. Fla. Stat. § 679.617 ("A transferee that acts in good faith takes free of the rights and interests described in subsection (1), even if the secured party fails to comply with this chapter or the requirements of any judicial proceeding.").

Despite Opacmare's allegations of UCC violations, title to the LAZZARA Mark transferred to GB Asset, and subsequently to Lazzara Custom Yachts. The parties to these transactions fully understood this to be the case at the time. (Doc. ## 73 at 33-34, 75 at 15, 76 at 5-7). Opacmare has provided no legal basis to re-write history and void those transactions, and it would undermine the plain language and the purpose behind Florida's commercial code to do so.

Therefore, the State Proceedings Supplementary, awarding "all Lazzara Yacht Corporation intellectual property" to Opacmare, did not transfer ownership of the LAZZARA Mark, as it was no longer Lazzara Yacht Corporation's intellectual property. As such, there is no material issue for trial and Lazzara Custom Yachts is entitled to judgment as a matter of law.

**B.  Rule 11 Motion**

In the Motion for sanctions, Lazzara Custom Yachts alleges that Opacmare has violated Rule 11 by continuing to challenge Lazzara Custom Yachts's ownership of the LAZZARA Mark. (Doc. # 93 at 4). The Rule 11 Motion originally served on counsel also alleged Rule 11 violations based on Opacmare's original claims and affirmative defenses to the counterclaims. (Doc. # 93-1 at 18-24). However, those claims and defenses were withdrawn, and Custom Yachts now seeks

sanctions only upon the continued denial of ownership in the answer. (Doc. # 93 at 4). Opacmare strenuously opposes the procedure and the merits of the Motion. (Doc. # 99). Although Opacmare cannot establish a legal theory which voids the transfer of title to Lazzara Custom Yachts, the Court nonetheless finds that sanctions are unwarranted.

Based on the unique and complicated facts of this case, including documents showing UCC foreclosure from an entity without a security interest and a state court order purporting to assign the LAZZARA Mark to Opacmare, the Court cannot say that it was objectively frivolous for Opacmare to deny that Lazzara Custom Yachts could properly establish chain of title. As such, the Motion (Doc. # 93) is denied. The Court also denies Opacmare's request for fees incurred defending the Motion. (Doc. # 99 at 22-23).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Lazzara Custom Yachts's Motion for Summary Judgment (Doc. # 79) is **GRANTED,**

(2) Opacmare's Cross Motion for Summary Judgment (Doc. # 88) is **DENIED,**

(3) Lazzara Custom Yachts's Motion for Sanctions (Doc. # 93) is **DENIED,**

(4) Lazzara Custom Yachts, LLC is the lawful owner of the United States Trademark Registration Number 3064907,

(5) Pursuant to 15 U.S.C. § 1119, the Director of the United States Patent and Trademark Office shall rectify the register to reflect that Lazzara Custom Yachts, LLC is the owner of United States Trademark Registration Number 3064907, and

(6) The Clerk shall enter judgment accordingly and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida on this 28th day of February, 2018.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE